UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Antoine Williams, | Case No.: 2:21-cv-01654-JAD-EJY |
| Plaintiff | |
| v. | **Order Screening and Dismissing Complaint, Granting Leave to Amend by December 29, 2021, and Denying Motion for Preliminary Injunction** |
| Gregory Bryant, et al., | |
| Defendants | [ECF No. 1-2] |

Plaintiff Antoine Williams brings this civil-rights action under 42 U.S.C. § 1983, claiming that his Eighth Amendment rights were violated at High Desert State Prison ("HDSP"). Because Williams applies to proceed *in forma pauperis*,[1] I screen his complaint under 28 U.S.C. § 1915A. I find that he has not pled a colorable Eighth Amendment claim for deliberate indifference to serious medical needs and dismiss the complaint without prejudice and with leave to amend by December 29, 2021. And because Williams has not stated a meritorious claim, I also deny his motion for preliminary injunction.[2]

**I.     Screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[3] In its review, the court must identify any cognizable claims and dismiss any claims that are

---

[1] ECF Nos. 1, 4. I find that Williams's application to proceed *in forma pauperis* is now complete when looking at the documents in ECF Nos. 1 and 4. So I will reinstate ECF No. 1 as an active, pending motion and defer consideration of that motion.

[2] ECF No. 1-2.

[3] *See* 28 U.S.C. § 1915A(a).

frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[4] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[5]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[6] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[7] Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[8] but a plaintiff must provide more than mere labels and conclusions.[9] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[10] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[11]

---

[4] *See* 28 U.S.C. § 1915A(b)(1)(2).

[5] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[6] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[7] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[8] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[9] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[11] *Id*.

## II. Screening Williams's complaint

### A. Defendants sued, and relief sought

In the complaint, Williams sues multiple defendants for events that took place while Williams was incarcerated at HDSP.[12] He sues Defendants Dr. Gregory Bryant,[13] Director of Nursing Benedicto Guttierez, Nurse Georges-Pele Taino, Nurse Jayme Cabrera, and Nurse Nonilon Peret.[14] Williams alleges one claim and seeks declaratory, injunctive, and monetary relief.[15]

### B. The factual basis for Williams's claims[16]

In July 2018, Williams suffered from swelling in his torso and ankles and was unable to sleep or eat.[17] He also experienced racing heartbeats. Williams made multiple requests to be seen by the medical staff. On September 5, 2018, someone at the prison infirmary saw Williams and then rushed him to Valley Hospital in Las Vegas. In the hospital emergency room, a doctor diagnosed Williams with congestive heart failure ("CHF") and atrial fibrillation ("a-fib"). Williams stayed at the hospital until September 10, 2018, before returning to HDSP.

Over the next three years at HDSP, Dr. Bryant was Williams's treating physician.[18] Dr. Bryant prescribed Williams several medications including digoxin, spironolactone, carvedilol, losartan, amiodarone, aspirin, simvastatin, lisinopril, and furosemide for Williams's CHF, but he

---

[12] ECF No. 1-1 at 1.

[13] Williams refers to this defendant as both "Dr. Bryant" and "Dr. Bryan." For consistency, I use "Dr. Bryant."

[14] *Id.* at 2–3.

[15] *Id.* at 4, 11.

[16] This is merely a summary of Williams's allegations and is not intended as findings of fact.

[17] *Id.* at 4.

[18] *Id.*

3

never explained to Williams the risks associated with taking these medications. Although someone at the hospital recommended that Williams get a stent put in his heart, Dr. Bryant told him not to and instead prescribed these medications.[19]

Dr. Bryant, Gutierrez, and Taino were supposed to schedule Williams for monthly blood tests to monitor his health and medications.[20] Cabrera and Peret were responsible for ensuring that inmates received care and treatment and that chronic care patients, such as Williams, were monitored properly. Williams did not receive testing to monitor his conditions and, as a result, Williams's kidney failure went undetected.

Williams experienced daily nausea, vomiting, and loss of appetite and waited 60 days to see medical.[21] In January 2021, Dr. Bryant diagnosed Williams with an overactive thyroid and put him on Methiaxolon. Williams had an adverse reaction to the medication including wheezing, gurgling, and insomnia.[22] Williams made multiple requests to see someone and waited 30 days.[23] This medication may have contributed to Williams's kidney failure. Dr. Bryant reduced Williams's dosage from 10 mg to 5 mg. Dr. Bryant never explained the risks of the thyroid medication or the risks of its interaction with Williams's CHF medications or if the CHF medications could cause thyroid issues or kidney damage.

In May 2021, Williams experienced breathing problems, insomnia, dizziness, and nausea.[24] He wrote multiple requests "to be seen" which Gutierrez, Taino, Cabrera, and Peret

---

[19] *Id.* at 5.
[20] *Id.*
[21] *Id.*
[22] *Id.* at 5–6.
[23] *Id.* at 6.
[24] *Id.*

would have been responsible for answering, scheduling, or assigning others to take those actions. Williams requested assistance from the pill call nurses; those nurses should have notified Dr. Bryant or the other nursing defendants that Williams needed to be seen. Family members called Peret about Williams's need to see a doctor.

In June and August 2021, a phlebotomist drew Williams's blood.[25] After the blood draw on August 5, 2021, there was an abnormal blood mark left on Williams's arm where the needle had pierced his skin.[26] That evening and for three days straight, Williams urinated blood heavily. Williams wrote to the nursing defendants and notified the pill call nurses. Williams's family called and spoke to Peret who assured his family that he would be seen. On August 26, 2021, the designated day for sick call, nobody called Williams to be seen. After Williams's family called, someone took Williams to the infirmary where Williams saw a "provider," not Dr. Bryant. The provider reviewed Williams's lab work and told Williams that he had stage 3 kidney failure and Graves' disease. The provider told Williams that these conditions were caused by taking multiple blood thinners and multiple diuretics, the failure to have regular blood tests, the failure to regularly see a doctor, the failure of medical to respond to Williams's requests for help, and the failure of medical to monitor and treat Williams's CHF and thyroid properly. Dr. Bryant and the nursing defendants knew or should have known that failure to monitor Williams's CHF and medications could cause both his thyroid condition and damage to his kidneys.[27] Since being diagnosed with stage 3 kidney failure, nobody has taken any steps to address the kidney failure or provide Williams with a treatment plan.

---

[25] *Id.*
[26] *Id.* at 7.
[27] *Id.* at 8.

Williams wrote informal grievances to medical on August 29 and 31, 2021, but received no response.[28] Williams "does not have the luxury of time to wait for a response, if any, to the kites, or the 6–8 months for the grievance."[29] Under these circumstances, "the grievance system has been rendered futile since it would take too long for Williams to wait for a response."[30] Williams asks that he be excused from the exhaustion requirements.[31]

### C. Williams has failed to state a colorable claim against any defendant.

Williams alleges Eighth Amendment claims for deliberate indifference to his serious medical needs resulting in Graves' disease and stage 3 kidney failure.[32] The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'"[33] A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate.[34] "To establish an Eighth Amendment violation, a plaintiff must satisfy both an

---

[28] *Id.* at 7.

[29] *Id.*

[30] *Id.* at 8.

[31] Because failure to exhaust is an affirmative defense, I will not address this issue on screening. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (holding that "failure to exhaust is an affirmative defense under the PLRA" and "inmates are not required to specially plead or demonstrate exhaustion in their complaints"); *see also Valentine v. Collier*, 140 S. Ct. 1598, 1601 (2020) (mem.) (discussing a potential "narrow category" of grievance procedures that are "'unavailable' to meet the plaintiff's purposes" of "responding to a rapidly spreading pandemic like Covid-19"). However, if I later determine that Williams has failed to exhaust his administrative remedies and that he does not qualify for an exception, I must dismiss his case. *See McKinney v. Carey*, 311 F.3d 1198, 1199-1200 (9th Cir. 2002) (holding that the "district court must dismiss an action involving prison conditions when the plaintiff did not exhaust his administrative remedies prior to filing suit but [was] in the process of doing so when a motion to dismiss [was] filed").

[32] *Id.* at 4, 8.

[33] *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

[34] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."[35]  For the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain."[36]  For the second prong, he must show "(a) purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."[37]  This requires that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[38]  When a prisoner claims deliberate indifference based on a delay in providing medical treatment, he must show that the delay led to further harm.[39]  Prison officials who know of a substantial risk to an inmate's health and safety are liable only if they responded unreasonably to the risk, even if the harm ultimately was not averted.[40]

      I find that Williams fails to state a colorable claim for deliberate indifference to serious medical needs at this time, but because I am not convinced that he cannot do so, I grant him leave to amend.  First, it appears that Williams is attempting to sue defendants based on his recent diagnoses of Graves' disease and stage 3 kidney failure and also based on the defendants'

---

[35] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

[36] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

[37] *Id.*

[38] *Farmer*, 511 U.S. at 837; *see also Peralta*, 744 F.3d at 1086.

[39] *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

[40] *Farmer*, 511 U.S. at 844.

failure to treat these conditions. According to the complaint, a "provider" diagnosed Williams with these conditions on August 26, 2021. Williams then submitted informal grievances seeking treatment and medication on August 29 and 31, 2021, and then initiated this lawsuit on September 8, 2021, for a lack of responsiveness by medical. Williams has not demonstrated that prison officials have been deliberately indifferent to his newly diagnosed Graves' disease or stage 3 kidney failure because, based on these allegations, it appears that prison officials just learned that Williams has these medical issues. Williams also has not demonstrated that any prison official is purposely failing to respond to him on these medical issues during the two-week period before he initiated this lawsuit.

Second, Williams needs to be more specific as to what actions he is alleging constitute deliberate indifference to his serious medical needs. Based on the allegations, Williams appears to assert medical negligence against Dr. Bryant and the nursing defendants for prescribing improper medications, failing to warn him of their side effects, failing to conduct timely blood draws, and failing to monitor his vital levels. However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."[41] Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.[42]

Finally, if Williams is attempting to allege a claim for deliberate indifference to serious medical needs based on Dr. Bryant's pursuit of medication over the heart stent, Williams has not

---

[41] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[42] *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

stated a colorable claim at this time. A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs.[43] To establish that a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health."[44] Because Williams has alleged no such facts, I dismiss his Eighth Amendment claim without prejudice but grant Williams leave to amend.

### III.     Motion for preliminary injunction [ECF No. 1-2]

Williams moves for a preliminary injunction ordering that he be given proper follow-up care for his stage 3 kidney failure and Graves' disease.[45] Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right."[46] "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[47] Because Williams has not pled a colorable claim, he cannot presently succeed on the merits of any claim and thus cannot satisfy the standard necessary to obtain injunctive relief. So I deny his motion for preliminary injunction without prejudice.

---

[43] *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).
[44] *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).
[45] ECF No. 1-2 at 2.
[46] *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008).
[47] *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

9

### IV. Leave to amend

Williams is granted leave to amend his Eighth Amendment claim for deliberate indifference to serious medical needs. If Williams chooses to file an amended complaint, he is advised that an amended complaint replaces the original complaint, so the amended complaint must be complete in itself.[48] He must file the amended complaint on this court's approved prisoner-civil-rights form, and it must be entitled "First Amended Complaint." Williams must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each count, he should allege <u>facts</u> sufficient to show what <u>each</u> defendant did to violate his civil rights. **He must file the amended complaint by December 29, 2021.**

### Conclusion

IT IS THEREFORE ORDERED that that the complaint [ECF No. 1-1] IS **DISMISSED** in its entirety without prejudice with leave to amend by December 29, 2021. If Williams chooses to file an amended complaint, he must use the approved form and write the words "First Amended" above the words "Civil Rights Complaint" in the caption. The amended complaint will be screened in a separate screening order, and **the screening process will take <u>many months</u>. If Williams does not file an amended complaint by December 29, 2021, the court will dismiss this case without prejudice.**

IT IS FURTHER ORDERED that the motion for preliminary injunction **[ECF No. 1-2] is DENIED** without prejudice.

---

[48] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "an amended pleading supersedes the original").

10

**The Clerk of Court is directed to:**

- **Reinstate** the application to proceed *in forma pauperis* [ECF No. 1] as an active, pending motion, and I defer a decision on that application;

- **FILE** the complaint [ECF No. 1-1]; and

- **SEND** Williams the approved form for filing a § 1983 prisoner complaint, instructions for the same, and a copy of his original complaint [ECF No. 1-1].

Dated: November 29, 2021

_____
U.S. District Judge